ORDERED SEALED BY COURT

MStewed 6/5/08 KNK

**ORIGINAL**

FILED

2008 JUN -4  AM 10: 22

CLERK, US DISTRICT COURT

BY _____ *kq* DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**'08 MJ 1757**

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | Magistrate Case No. _____ |
| Plaintiff,  ) | COMPLAINT FOR VIOLATION OF: |
| v.  ) | |
| ROLAND MONTEMAYOR (1),  )<br>aka Rolo,  )<br>JORGE LOPEZ-HERRERA (2),  )<br>aka Pedro Bombas,  ) | Title 21, United States Code, Sections 846 and 841(a)(1) - Conspiracy to Distribute Methamphetamine; Title 18 United States Code, Section 2 - Aiding and Abetting |
| Defendants.  ) | |

The undersigned complainant being duly sworn states:

Beginning at a date unknown and continuing up to and including April 6, 2007, within the Southern District of California, and elsewhere, defendants ROLAND MONTEMAYOR, aka Rolo, and JORGE LOPEZ-HERRERA, aka Pedro Bombas, did knowingly and intentionally conspire with each other, and other persons known and unknown, to distribute 50 grams and more of methamphetamine (actual), a Schedule II Controlled Substance; in violation of Title 21 United States Code, Sections 846 and 841(a)(1), and Title 18, United States Code, Section 2.

And the complainant states that this complaint is based on the attached affidavit, incorporated herein by reference.

_____
Signature of Complainant

Sworn to before me and subscribed in my presence this ____ day of June, 2008.

SEALED by Order of
Magistrate Judge Leo S. Papas
Date  JUN  4 2008

_____
Leo S. Papas
US Magistrate Judge

_____
HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

## A F F I D A V I T

ASIANO B. DAVILA, being duly sworn, states:

I am a Special Agent with the Federal Bureau of Investigation ("FBI"). The following is based on my own investigation, oral and written reports by other law enforcement officers, physical and electronic surveillance, interviews, subpoenaed and public records, database checks, searches, phone analysis, and other investigation. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the complaint. Conversations below are set forth in substance unless noted, and most call descriptions are based on summaries prepared by monitors, not final transcripts. My interpretations of certain statements are set forth in brackets. Dates and times are approximate.

This Complaint arises out of a quarter-pound methamphetamine deal involving a FBI confidential informant and defendants Roland "Rolo" Montemayor, who is a member of the Del Sol street gang, and Jorge "Pedro Bombas" Lopez-Herrera. On April 6, 2007, Montemayor met with a confidential informant at the informant's apartment in San Diego to conduct a quarter pound methamphetamine deal. The informant's residence was equipped with recording equipment. Montemayor also had a number of related telephone conversations with the informant concerning the methamphetamine deal. The meetings and telephone conversations were recorded. While the video recording of the meeting was scrambled due to a technical issue, the audio recording was not scrambled. In addition, a FBI agent was able to watch the methamphetamine deal as the deal occurred over the video feed.

On April 5, 2007, at approximately 11:22 a.m., in a recorded call, the informant spoke to Montemayor regarding getting a "q [quarter pound of methamphetamine]" from Montemayor. The informant told Montemayor that the informant wanted to "make sure it [the methamphetamine] is good." Montemayor responded that the "good shit is . . . expensive – $850 an ounce." The informant stated that he needed the "q [quarter pound of methamphetamine] today" and that the informant had the money for it. The informant also stated that the informant could get "a half [half pound]" but wanted to check on the quality of the methamphetamine first through an initial quarter-pound buy. Montemayor replied: "We will try it before we buy it." At approximately 5:14 p.m., Montemayor called the informant and told the informant that Montemayor could obtain the quarter pound of methamphetamine "for 28" [$2,800]. In a series of follow-up calls, Montemayor and the informant were unable to get in contact with Montemayor's source and the deal was moved to the next day.

On April 6, at approximately 12:24 p.m., in a recorded telephone call, Montemayor and the informant discussed Montemayor obtaining a quarter pound of methamphetamine for "22" [$2,200]. Montemayor told the informant that Montemayor was unsure as to the quality of the methamphetamine, but stated "it should be decent." In a series of follow-up calls, Montemayor

1

informed the informant that Montemayor was unable to contact the source that Montemayor had anticipated using for the deal.  At approximately 3:48 p.m., Montemayor told the informant not "to trip" because "it is going to go through."  When the informant complained that his "customer" was waiting, Montemayor replied that the customer "has to understand it is hard to get that shit right now – the people who are doing big things are not around – they aren't telling nobody."  Montemayor also stated that he had some methamphetamine with him, but not a quarter pound.

At approximately 4:04 p.m. on April 6, Montemayor entered the informant's residence.  The informant provided Montemayor with $3000 in order to purchase a quarter pound of methamphetamine.  Montemayor then made several telephone calls in an attempt to have someone deliver a quarter pound of methamphetamine to the residence.  At approximately 5:32 p.m., pursuant to a call from Montemayor, Jorge Lopez-Herrera came to the informant's residence with a plastic bag containing approximately a quarter pound (four ounces) of methamphetamine;  subsequently analysis revealed that the methamphetamine sold to the informant contained approximately **68.9 grams of methamphetamine (actual)**.

During the transaction, Montemayor discussed how many grams were in four ounces.  Montemayor was also observed his hands in the bag with the methamphetamine, and talking about the physical characteristics of the methamphetamine.  Finally, Montemayor was observed paying Lopez-Herrera $2900 for the methamphetamine; Montemayor apparently kept $100 for himself.

SEALING REQUEST: Because this is an ongoing investigation and premature disclosure of the investigation and this affidavit could endanger agents and officers, cause suspects to flee, and cause the destruction of evidence, I request that this affidavit, all arrest warrants, the complaint, and all other associated court records be sealed until further court order.

_____
Asiano B. Davila, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on June ___, 2008.

_____
HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

SEALED by Order of
Magistrate Judge Leo S. Papas
Date __JUN 4 2008__

Leo S. Papas
                                                    2